IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| BCL Capital Funding, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 16-C-3607 |
| | ) | |
| Rudd & Company, PLLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR GOOD FAITH FINDING

NOW COMES the Defendant, Rudd & Co., PLLC ("Rudd"), by and through its attorneys, and hereby moves this Court for a finding that its settlement with the plaintiff is made in good faith for purposes of the Joint Tortfeasor Contribution Act, § 740 ILCS 100/0.01, et seq. In support of this motion, the defendant states as follows:

1.     The plaintiff has brought a Complaint against this defendant as a result of providing financing to an entity controlled by John Dunlap. John Dunlap was a client of Rudd. It is alleged that John Dunlap provided the plaintiff with certain documents prepared by Rudd for John Dunlap which plaintiff considered when deciding to provide the financing at issue.

2.     The plaintiff and Rudd have entered into a Settlement Agreement resolving the plaintiff's claims against Rudd for $25,000. The Settlement Agreement is attached as Exhibit "A". Rudd requests that this Court enter an order finding that the settlement between the plaintiff and Rudd is made in good faith for purposes of the Joint Tortfeasor Contribution Act (the "Act"), 740 ILCS 100/0.01, et seq. The parties to this settlement have made the terms of the Settlement Agreement known to this Court, and the consideration constitutes valid consideration. Moreover, there is no evidence that the settlement was the result of wrongful conduct, collusion or fraud, or that the settlement conflicts with the terms of or policies underlying the Act. Therefore, this

Court should enter an order dismissing the defendant with prejudice, and that the settlement is in good faith.

3.     The Complaint alleges that Rudd prepared certain documents for John Dunlap that Dunlap provided to plaintiff and plaintiff utilized in its decision to provide financing to Dunlap. The plaintiff alleges that the documents contained inaccurate information and that it was damaged as a result of these documents.

4.     The plaintiff and Rudd have discussed settlement possibilities throughout the pendency of this litigation.  The terms of the Settlement Agreement were eventually reached.

5.     The executed final written Settlement Agreement is attached as Exhibit "A".  It provides that the plaintiff will receive $25,000, contingent upon this Court finding that the Agreement is in good faith under the Illinois Joint Tortfeasor Contribution Act.

6.     The Settlement Agreement is an integrated document that contains the entire agreement between the plaintiff and Rudd.  There are no "side deals".  The plaintiff and Rudd negotiated the terms of the Settlement Agreement to effect a good faith settlement that was fair, equitable and the result of an arms-length, bargained for exchange.

## <u>ARGUMENT</u>

The Illinois Joint Tortfeasor Contribution Act (the "Act") provides that:

> c.      When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of the amount stated in the release or the covenant, or any amount of the consideration actually paid for, whichever is greater.

740 ILCS 100/2(c).  The purposes of the Act are "to give effect to the strong public policy favoring the peaceful settlement of claims" and to ensure fair apportionment among tortfeasors.

In Re Guardianship of Babb, 162 Ill.2d 153, 163-74 (1994). A trial court's determination as to the good faith of a settlement is within the trial court's discretion, and can be attacked on appeal only for abuse of discretion. See, Dubina v. Mesirow Realty Development, Inc., 197 Ill.2d 185, 191-91 (2001).

To make a good faith determination, the trial court must consider "the entire circumstances surrounding the settlement." Babb, 162 Ill.2d at 162. The court, however, is not required to conduct an evidentiary hearing. "Courts have repeatedly and consistently held that a separate evidentiary hearing is not required and that a trial court need not decide the merits of the tort case or rule on the relative liabilities of the parties before making a good faith determination." Johnson v. United Airlines, 203 Ill.2d 121 (2003). The court "is authorized to determine the good faith of a settlement based solely on the arguments of counsel." McKanna v. Duo-Fast Corp., 161 Ill. App. 3d 518 (1st Dist. 1997). The court can also consider documents filed in support of the motion. Melzer v. Bausch & Lomb, Inc., 193 Ill. App. 3d 59, 62 (1st Dist. 1992). The "entire circumstances" here establish that the agreement is in "good faith" under the Act.

## A.  RUDD'S PRIMA FACIE SHOWING OF GOOD FAITH SUPPORTS THE MOTION.

Under the burden-shifting approach that Illinois courts have adopted to evaluate "good faith" according to the Act, the settling parties bear the initial burden of showing that the settlement was made in good faith. Once a preliminary showing of good faith has been made, the burden shifts to any party challenging the settlement to establish that it was not made in good faith. Wilson v. Hoffman Group, Inc., 131 Ill.2d 308, 318-19 (1989).

The Agreement easily satisfies the initial burden:

> When there is a resolution of a claim by virtue of a settlement, and the terms of the settlement are made known to the court, there has been a preliminary showing of good faith which creates a presumption of validity.

Jesse v. Amoco Oil Co., 230 Ill. App. 3d 337, 346 (1st Dist. 1992); see, also, Snoddy v. Teepak, 198 Ill. App. 3d 966, 969 (1st Dist. 1990) (evidence of release and settlement terms sufficient to raise presumption of good faith). A settlement is considered prima facie in good faith when the settling parties demonstrate that the settlement is supported by consideration. McDermott v. Metropolitan Sanitary Dist., 240 Ill. App. 3d 1, 44 (1st Dist. 1992). Rudd has satisfied this initial burden because:

    (a)    The terms and conditions of the Agreement are known to the court. (Agreement, attached as Exhibit "A".)

    (b)    The plaintiff's claim against Rudd will be resolved in exchange for $25,000 and a full release, which is valid consideration.

    (c)    The plaintiff and Rudd voluntarily and in good faith entered into the Agreement to resolve the plaintiff's claim against Rudd.

Under these circumstances, the settlement is presumed to be in good faith, and the burden shifts to any contesting party to demonstrate bad faith.

**B.**    **THERE IS NO BASIS TO ESTABLISH THAT THE AGREEMENT WAS IN BAD FAITH.**

To rebut Rudd's showing of good faith, a contesting party must establish by at least a preponderance of the evidence that the agreement was the result of wrongful conduct, collusion or fraud, or conflicts with the terms of the Act or is inconsistent with the policies underlying the Act. See, Jesse, 230 Ill. App. 3d at 346.

No party can meet this burden. The Agreement in this case bears all of the necessary requirements of good faith typically relied on by Illinois courts, including the following:

    a.    the settlement resulted from arms-length negotiations between counsel for the plaintiff and counsel for Rudd;

      b.        Rudd and the plaintiff represented in the Agreement that they entered into the settlement in good faith.

      c.        The payment amount is not *de minimus*.

      d.        There are no side deals between the plaintiff and Rudd that would result in any additional consideration being paid to either party or their counsel other than that expressly provided for in the Agreement.

Under these circumstances, the court should enter a finding of good faith. See, <u>Smith v. Texaco, Inc.</u>, 232 Ill. App. 3d 463, 469 (affirming finding of good faith settlement); <u>Melzer</u>, 193 Ill. App. 3d at 62 (same).

<u>**CONCLUSION**</u>

For the foregoing reasons, the agreement between the plaintiff and Rudd should be found to be in good faith for purposes of the Illinois Joint Tortfeasor Contribution Act.

WHEREFORE, RUDD & CO., PLLC hereby prays that this Court enter an order:

A.      Finding that the agreement attached as Exhibit "A" and described herein to be "in good faith" under the Act; and

B.      Dismissing it from the case with prejudice;

                    Respectfully submitted,

                    Falkenberg Fieweger & Ives LLP,

                    _____*/s/ Thomas F. Falkenberg*_____
                    **Attorneys for Defendant, Rudd & Co., PLLC**

Thomas F. Falkenberg
Falkenberg Fieweger & Ives LLP
30 N. LaSalle St., Suite 4020
Chicago, Illinois 60602
(312) 566-4801

# Exhibit A

2016-cv-3607
Motion for Good Faith Finding

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into this 24th day of January, 2017 (the "Effective Date"), by and between **BCL-Capital Funding, LLC** ("BCL"), and **Rudd & Company, PLLC** ("Rudd"). BCL and Rudd are collectively referred to as the "Parties".

**WHEREAS**, Rudd provided certain accounting services to John Dunlap, including but not limited to, tax preparation and compiling personal financial statements for a number of years (collectively, "the Services"); and

**WHEREAS**, John Dunlap obtained financing from BCL for an entity he controlled, and it is alleged that John Dunlap provided BCL certain documents prepared by Rudd for use in determining whether to provide the financing; and

**WHEREAS**, various disputes have arisen about the Services, and BCL has filed a lawsuit in the Circuit Court of Cook County which was later removed to the United States District Court for the Northern District of Illinois and assigned court number 16-C-3607 against Rudd based on the Services (the "Claims"); and

**WHEREAS**, Rudd expressly denies any and all Claims asserted against it arising out of the Services; and

**WHEREAS**, the Parties now wish to compromise and settle the Claims for the sole reason of avoiding future expenses and inconvenience and further desire to settle and preclude, fully, finally and forever any and all claims or disputes between the Parties concerning all matters claimed, asserted or alleged in the Claims, or which could have been claimed, asserted or alleged in the Claims and which arise out of or are in any way related to the Services.

**NOW, THEREFORE**, in consideration of the promises, mutual agreements, releases, terms and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties stipulate and agree as follows:

## TERMS

1.      Rudd agrees to pay BCL the total sum of Twenty Five Thousand Dollars ($25,000) in full and final settlement of the Claims and any claims by BCL arising out of the Services.  BCL shall provide Rudd with an executed W-9 form prior to disbursement of the funds.  This settlement is contingent on the pending lawsuit referenced above being dismissed with prejudice pursuant to settlement, and the court finding that the settlement is in good faith pursuant to the Illinois Contribution Act.

2.      Each of the Parties agrees to bear their own attorneys' fees, costs and expenses of this Claim -- including any costs, fees or expenses incurred in drafting and executing this Agreement.

## RELEASE

In consideration of the undertakings set forth above, the Parties hereby agree as follows:

3.      BCL, on its own behalf and on behalf of its current, future or former subsidiaries, officers, directors, employees, agents, representatives, attorneys, insurers, predecessors, successors and assigns, and for anyone claiming by or through it, hereby releases, and forever discharges Rudd, together with Rudd's current, future or former agents, employees, partners, including but not limited to John Clark, directors, representatives, attorneys, subsidiaries, heirs, personal representatives, insurers, predecessors, successors, and assigns, of and from any and all claims, actions, or causes of action at law, or in equity, loss, liability of whatsoever kind or nature, which BCL now has, or hereinafter may have, whether known or unknown, upon or by

reason of any matter, cause or thing whatsoever, arising out of or in connection with the Claims or the Services.

## OTHER PROVISIONS

4.   **No Admission Of Liability.**   Nothing contained herein shall constitute an adjudication or finding on the merits as to the claims of any party herein, and shall not be construed as an admission of liability or fault or an acknowledgement of any fact, allegation or claim that has been or could have been made, nor shall any third party derive any benefit whatsoever from the statements made within this Agreement.

5.   **Confidentiality.**   BCL expressly agrees not to disclose the terms, conditions, amount or character of this Agreement, or to discuss or disclose the nature, facts or circumstances of this Claim to any person other than its present attorneys, accountants or tax advisors, except as required by lawful subpoena or pursuant to a court order requiring such disclosure, including any disclosure necessary for the court to find that the settlement is in good faith. BCL further agrees that prior to disclosing the terms and provisions of this Agreement to any such person, it will advise that person of this confidentiality provision and will secure that person's prior agreement to keep the provisions of this Agreement confidential in the same manner as if the person were a party to this Agreement. BCL acknowledges and agrees that disclosure of any information concerning this Agreement will constitute a violation of this provision of the Agreement. BCL agrees that any comment by it or its agents concerning this cause, and its resolution will be limited to the following: "This Claim has been settled, and under the terms of the Settlement Agreement, we are not permitted to comment further."

6.   **Non-Disparagement.**   BCL agrees that it will not in any way disparage Rudd, including current or former officers, directors and employees, or make or solicit any comments,

statements, or the like to the media or to others that may be considered by a reasonable person to be derogatory or detrimental to the good names or business reputation of said entity or persons.

7.    **Indemnification.**  If any third-party, including but not limited to John Dunlap, brings an action or asserts claims for contribution or indemnity against Rudd arising out of or relating to the Claims, or otherwise asserts an action or claim against Rudd that is derived from BCL claims against such third-party, then BCL will indemnify and hold Rudd harmless against any claims, causes of action, liabilities, expenses (including attorneys fees), losses, or damages of any kind whatsoever that Rudd may incur or for which Rudd may become liable as a result of such action or claims being brought or asserted by a third-party.

8.    **No Regulatory Action.**  BCL further agrees that neither it nor anyone on its behalf has nor will file any charges or complaints against Rudd or any current or former officers, directors, partners or employees, with any government or administrative agency or any organization which in any way regulates the activities or accountants, unless otherwise prohibited by law.

9.    **No Assignment**.  BCL represents and warrants that no claim, right, demand or cause of action which it may have had, may now have or will hereinafter have, or claims to have against Rudd relating to any claim arising out or in connection with the Services performed by Rudd for Dunlap has been assigned or transferred in any way to any other person, firm, corporation or other entity in any manner, including, but not limited to assignment or transfer by subrogation or by operation of law.

10.    **Authority To Execute**.  The person(s) signing this Agreement hereby expressly represent and warrant that they are expressly authorized in law and in fact to do so individually and on behalf of any entity listed herein as a signatory of this Agreement.

11.    **Execution Of Counterparts**.  This Agreement may be executed in counterparts which, when taken together, shall constitute a single document.   All executed copies are duplicate originals equally admissible in evidence in the event an action to enforce this Agreement is hereinafter brought.

12.    **Governing Law**.   This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

13.    **Arbitration**.   Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. In addition to any award of actual, special or liquidated damages (as the case may be), in any such action the prevailing party shall be entitled to an award of reasonable attorneys' fees, costs and expenses incurred therein.

14.    **Enforceability**.  If any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable, the parties agree that such provision(s) may be modified and shall be enforced to the maximum extent possible under Illinois law.

15.    **Consultation With Attorney**.  The Parties acknowledge that they have consulted with their attorneys regarding the terms and effect of this Agreement and further acknowledge that they are acting upon their own best judgment with the advice of their legal counsel.

16.    **Entire Agreement**.   This Agreement constitutes the sole, only, entire and complete agreement of the Parties relating in any way to the subject matters hereof and the Claims.  No statements, promises or representations have been made by any party, or relied upon, and no consideration has been or is offered, promised, expected or held out, other than as

stated in this Agreement. There are no oral or written collateral agreements. All prior discussions and negotiations have been, and are, merged or integrated into, and are superceded by this Agreement, the terms of which may not be modified, except in a writing signed by the Parties.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement and Mutual Release.


**BCL Capital Funding, LLC**

By: _____


**Rudd & Company, PLLC**


By:    John Clark
_____

stated in this Agreement. There are no oral or written collateral agreements. All prior discussions and negotiations have been, and are, merged or integrated into, and are superceded by this Agreement, the terms of which may not be modified, except in a writing signed by the Parties.

**IN WITNESS WHEREOF**, the undersigned have executed this Settlement Agreement and Mutual Release.

BCL Capital Funding, LLC

By: _____

Rudd & Company, PLLC

By: _____
    John Clark

